# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BILLY J. WINROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-761-JHP-TLW |
| | ) | |
| JUSTIN JONES, Director; et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On December 23, 2008, Plaintiff, a state inmate appearing *pro se*, filed a civil rights complaint (Dkt. # 1), naming three (3) defendants: Justin Jones, Director; Walter Dinwiddie, Warden; and James Lowman, Employee. On June 1, 2009, Plaintiff filed an amended complaint (Dkt. # 15), naming five (5) defendants: Justin Jones, Director; Walter Dinwiddie, Warden; James Lowman, Employee; Jack Lemmons, Employee, and Sgt. Reeves, Employee. With the exception of Justin Jones, the defendants are employees at Dick Conner Correctional Center ("DCCC"). On August 27, 2009, Defendants Jones, Dinwiddie, Lowman, and Lemons filed a motion for summary judgment (Dkt. # 30), along with a Special Report (Dkt. # 29). Plaintiff filed a response (Dkt. # 34). For the reasons discussed below, the Court finds Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies should be granted.[1]

---

[1] The Court's records reflect that Defendant Sgt. Reeves has not been served. See Dkt. # 27 (unexecuted return of service). In light of today's ruling dismissing the amended complaint, the Court finds it would be futile to afford Plaintiff the opportunity to effect service on Defendant Reeves.

## BACKGROUND

The events giving rise to Plaintiff's claims occurred at DCCC, located in Hominy, Oklahoma. Plaintiff is no longer incarcerated at that facility. In his amended complaint (Dkt. # 15), Plaintiff identifies two (2) claims, as follows:

Count I: I suffered great pain and suffering while breathing the friable asbestos dust particles in my housing cell, constituting cruel and unusual punishment in violation of my 8th and 14th const. rights to the United States Const.

Count II: I've been denied due process of law, in violation of this plaintiff's 5th and 14th const. rights, which has resulted in pain and suffering and being placed under a doctor's care: constituting a deliberate indifference to serious medical needs.

(Dkt. # 15). In support of his claims, Plaintiff alleges that on August 31, 2006, he was placed in the Segregated Housing Unit ("SHU") at DCCC. While in his cell in SHU, he noticed that "there was a flow of dust particles coming from the air conditioning ventilation system." See id. Upon closer examination, Plaintiff determined that "a piece of asbestos [was] sticking inside of the ventilation duct work and the asbestos had become friable." Id. Plaintiff further states that he "lived under these unconstitutional conditions for approximately 30 days breathing and eating the friable asbestos dust particles coming from the ventilation system." Id. Plaintiff claims he has "migraine headaches, bleeding nose issues, and a swollen esophagus that causes this plaintiff pain while eating and drinking." Id. In his request for relief, Plaintiff states as follows:

I am requesting a jury trial for these civil rights violations, and or to be compensated for my pain and sufferings by each defendant in the amount of eighty thousand dollars ($80,000) each defendant, and have all medical bills paid future, and present by each defendant in the amount set by this honorable court, and order the defendants to remove all friable asbestos dust particles from all inmate support units at the DCCC and any other support units under the authority of the DOC and these defendants.

(Dkt. # 15).

The Court takes judicial notice that Plaintiff has previously sought relief on the same underlying claim, his alleged exposure to asbestos in the SHU at DCCC, in another case filed in this federal district court, N.D. Okla. Case No. 07-CV-323-TCK-PJC. The record for that case reflects that by Opinion and Order filed September 3, 2008, see Dkt. # 30, Ex. 2, the Hon. Terence Kern determined that Plaintiff had failed to exhaust administrative remedies and, for that reason, dismissed the complaint.

In response to the amended complaint in this case, Defendants filed a motion for summary judgment (Dkt. # 30) asserting three (3) bases for entry of summary judgment, as follows: (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff filed his complaint outside the applicable statute of limitations, and (3) Plaintiff's request for removal of the asbestos from DCCC is moot. Plaintiff filed a response (Dkt. # 34) to Defendants' motion for summary judgment.

*ANALYSIS*

**A. Summary judgment standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. Hall v. Bellmon,

935 F.2d 1106, 1111 (10th Cir. 1991). However, the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized Special Report prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. The Court may treat the Special Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111. The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe a plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**B. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, 548 U.S. 81 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). There is no futility exception to § 1997e(a)'s exhaustion requirement. Booth, 532 U.S. at 741 n. 6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

To satisfy the exhaustion requirement, an inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of is proceedings." Ngo, 548 U.S. at 90-91. As a result, "the PLRA exhaustion requirement requires proper exhaustion." Id. at 93; see also Jones v. Bock, 549 U.S. 199 (2007); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). When a prisoner's claim has been rejected by prison authorities on procedural grounds, that claim "should be dismissed from the plaintiff's complaint with prejudice." Kikumura v. Osagie, 461 F.3d 1269,

1290 (10th Cir. 2006), *overruling on other grounds recognized in* Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008).

**C. Defendants are entitled to judgment as a matter of law**

The Court finds that in this case, the evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact as to whether Plaintiff satisfied the exhaustion requirement of the PLRA prior to commencing this action. The Department of Corrections ("DOC") grievance procedure, see Dkt. # 30, Ex. 1 ("Inmate/Offender Grievance Process" (OP-090124)), calls for submission of a "request to staff" within 7 calendar days of the alleged incident. If the issue remains unresolved, the prisoner must submit a formal grievance, with the answered request to staff attached, to the facility reviewing authority or facility health services administrator within 15 calendar days of the incident or the date of the response to the "request to staff" form, whichever is later. See id. The facility reviewing authority is required to respond to the grievance within 15 working days of receipt of the grievance. If dissatisfied with the response by the reviewing authority, the inmate may then appeal to the administrative review authority ("ARA") within 15 calendar days of receipt of the facility reviewing authority's response. The ruling of the ARA is final and concludes the internal administrative remedy available to the inmate/offender within DOC's jurisdiction. Id. There is also a provision for submitting a grievance out of time. Id.

Plaintiff's claim in this case falls squarely within the PLRA's exhaustion requirement because Plaintiff was "confined in any jail, prison, or other correctional facility" when his claim arose. Cf. Robbins v. Chronister, 402 F.3d 1047, 1054 (10th Cir. 2005) ("Constitutional claims arising *before* the events causing the plaintiff's incarceration are unrelated to prison confinement."). In support of their dispositive motion, Defendants present evidence indicating that Plaintiff failed

to exhaust his administrative remedies, see Dkt. # 29, Attachment 4, Affidavit of Debbie L. Morton, in accordance with DOC's grievance policy, see Dkt. # 30, Ex. 1, OP-090124.

In the Opinion and Order dismissing Plaintiff's prior action, see Dkt. # 30, Ex. 2, the Court found that "although Plaintiff submitted various 'requests to staff,' he never filed a grievance or a grievance appeal concerning his alleged exposure to asbestos while in SHU at DCCC." The record before this Court demonstrates that, after dismissal of his prior civil rights action based on failure to exhaust administrative remedies, Plaintiff unsuccessfully attempted to complete the administrative grievance process. He filed a request to staff on September 9, 2008, or two (2) years after he alleges he was exposed to asbestos. See Dkt. # 29, Attachment 4a at page 4. As noted by Defendants, even if that request to staff were considered timely, Plaintiff then failed to follow proper grievance procedures. Instead of filing a grievance with the health service administrator or warden at DCCC, Plaintiff sent his grievance directly to Justin Jones, Director of the DOC. See id. at pages 2-3. As a result, his grievance appeal was "returned unanswered" on September 29, 2008, see Dkt. # 29, Attachment 4a at page 1, because the grievance was not filed through medical services as required under OP-090124. Nothing in the record suggests that Plaintiff ever submitted a grievance to DCCC's health service administrator or warden.

On October 14, 2008, Plaintiff sent a request to staff to Justin Jones, Director of DOC. See Dkt. # 29, Attachment 4b at page 2. By letter dated October 17, 2008, see Dkt. # 29, Attachment 4b at page 1, the Director's Designee Debbie Morton wrote that his correspondence was "returned unanswered" as improperly filed. However, she also provided instructions for properly exhausting administrative remedies. Id. Nothing in the record suggests that Plaintiff followed her instructions.

7

Instead, without waiting for a response to the request to staff, Plaintiff sent a grievance, dated October 14, 2008, see Dkt. # 29, Attachment 4d at page 2, to the Medical Director of the DOC. The Medical Services Administrator responded, by letter dated November 18, 2008, and explained that the correspondence was "returned unanswered . . . for continued misuse of the grievance process." See id. at page 1. Plaintiff also wrote a letter, dated November 17, 2008, to the Medical Director inquiring as to the status of his grievance sent the preceding month. See Dkt. # 29, Attachment 4c at page 1. The Medical Services Administrator again responded, by letter dated December 22, 2008, see id. at page 2, that the grievance had been "returned unanswered . . . for continued misuse of the grievance process." Plaintiff filed the instant civil rights complaint on December 23, 2008.

In response to Defendants' motion for summary judgment, Plaintiff claims he has exhausted "available" remedies and that any further effort to exhaust would be futile. See Dkt. # 34. The Court agrees with Plaintiff that any further effort to exhaust administrative remedies as to the claims raised in the amended complaint is futile.[2] However, the futility results from the passage of time since the alleged exposure to asbestos coupled with Plaintiff's ongoing failure to follow grievance procedures. As to his claim that he was exposed to asbestos, Plaintiff has not provided evidence suggesting that he requested to file a grievance out of time. See Dkt. # 30, Ex. 1, OP-090124 at page 15. As to his claim that he was provided inadequate medical care, his requests to staff and grievances were returned unanswered based on his failure to follow grievance procedures. See Dkt. # 29, Attachments 4, 4a, 4b, 4c. Nothing in the record suggests that Plaintiff has ever submitted a grievance, with an answered request to staff attached, to the DCCC review authority. Instead,

---

[2]If Plaintiff believes that he is receiving inadequate medical care at his current facility, he must exhaust administrative remedies available at that facility before filing a civil rights action against the appropriate defendants.

evidence provided by Defendants demonstrates that no grievance was ever filed at DCCC concerning the issues raised in this action. See Dkt. # 29, Attachment 3 at ¶ 5. Based on that evidence, the Court finds Plaintiff has failed to controvert Defendants' summary judgment evidence indicating that he did not follow grievance procedures properly. As a result, he has procedurally defaulted his claims arising from his alleged exposure to asbestos. Kikumura, 461 F.3d at 1289, 1290-91. Therefore, Plaintiff's claims concerning asbestos exposure and inadequate medical care, as alleged in the amended complaint, must be dismissed with prejudice. Id.

In summary, upon review of the record, the Court finds that Plaintiff has not controverted Defendants' summary judgment evidence demonstrating that Plaintiff failed to follow DOC procedures for exhausting administrative remedies for the claims raised in the amended complaint. The evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact as to the exhaustion issue. Therefore, the Court concludes Defendants are entitled to judgment as a matter of law and their motion for summary judgment shall be granted. Plaintiff's claims as asserted in the amended complaint shall be dismissed with prejudice as procedurally defaulted. A separate judgment shall be entered for Defendants.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Dkt. # 30) is **granted**.
2. Plaintiff's complaint (Dkt. # 1), as amended (Dkt. # 15), is **dismissed with prejudice**.
3. This is a final Order. A separate Judgment shall be entered in favor of Defendants.

DATED THIS 5th day of February 2010.

James H. Payne
United States District Judge
Northern District of Oklahoma